Philip D. Dracht, CA State Bar No. 219044
FABIAN VANCOTT
15 W. Carillo St.
Santa Barbara, California 93101
Tel: (801) 323-2251
Fax: (801) 596-2814
Email: PDracht@fabianvancott.com

Kevin N. Anderson, UT State Bar No: A0100, *Pro Hac Vice admission pending*
Audrey S. Olson, CA State Bar No. 304195
FABIAN VANCOTT
215 South State Street, Suite 1200
Salt Lake City, UT 84111-2323
Tel: (801) 531-8900
Fax: (801) 596-2814
Email: KAnderson@fabianvancott.com
    AOlson@fabianvancott.com

Attorneys for UD Dissolution Liquidating Trust

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UD DISSOLUTION LIQUIDATING TRUST, | Case No: 5:18-cv-01920 |
| Plaintiff, | Judge: |
| v. | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| SPHERE 3D CORPORATION, incorporated under the laws of the Province of Ontario, Canada; OVERLAND STORAGE, INC., a California corporation; ERIC L. KELLY, an individual; CYRUS CAPITAL PARTNERS, L.P., a Delaware limited partnership; FBC HOLDINGS, S.A.R.L., a private limited liability company organized in Luxembourg; CRESCENT 1, L.P., a Delaware limited partnership; CRS MASTER FUND, L.P., a Cayman Islands exempted limited partnership; CYRUS OPPORTUNITIES MASTER FUND II, LTD., a Cayman Islands exempted limited company; CYRUS SELECT OPPORTUNITIES MASTER FUND, LTD., a Cayman Islands exempted limited company; CYRUS CAPITAL PARTNERS GP, L.L.C., a Delaware limited partnership; CYRUS CAPITAL ADVISORS, L.L.C., a Delaware limited liability company; STEPHEN C. FREIDHEIM, an individual | |
| Defendants. | |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff UD Dissolution Liquidating Trust (the "**UD Trust**") alleges against Defendants as follows:

### NATURE OF THE CASE

1. Plaintiff UD Dissolution Liquidating Trust ("**Plaintiff**" or the "**UD Trust**"), brings this voidable transfer action in connection with Sphere 3D Corporation's ("**Sphere's**") recently announced proposed sale of Overland Storage, Inc. ("**Overland**"), a wholly-owned subsidiary of Sphere that constitutes at least 90% of Sphere's revenue and substantially all of Sphere's assets, to Silicon Valley Technology Partners, LLC ("**SVTP**").

2. SVTP is controlled by insiders of Sphere seeking to benefit themselves to the detriment of Sphere's creditors, including the UD Trust.

3. Based on publicly available information, it is clear that Sphere is insolvent and/or will be rendered insolvent once Overland is sold.

4. Sphere, Overland, and SVTP are closely related entities that are controlled by Sphere, Defendant Eric Kelly ("**Kelly**"), and other insiders, including, but not limited to FBC (defined below) and other entities that collectively comprise the Cyrus Group (defined below).

5. Over time, FBC and other Cyrus Group entities have unfairly amassed controlling stakes of equity and debt in Sphere, recently reporting holding at least $27 million in "secured" loans to Sphere and 10.5% of Sphere's Common Stock. At least some of the Cyrus Group's loans constitute fraudulent transfers that the UD Trust seeks to avoid.

6. In 2015, the UD Trust sued Sphere for over $10 million in damages for claims arising from Sphere's wrongful acts committed in connection with its 2014 purchase of V3's assets in a lawsuit styled *UD Dissolution Liquidating Trust v. Sphere 3D Corporation*, which is currently pending in the United States District Court for the District of Delaware.

7. The Cyrus Group's convertible loans to Sphere and Sphere's recently announced proposed sale of Overland to SVTP (the "**Acquisition**") each reflect a transfer of assets that will leave Sphere insolvent and benefit insiders, and that was done with an actual intent to hinder, defraud, or delay the UD Trust from recovering its claims against Sphere, and/or which, at a

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

minimum, is a constructively fraudulent transfer under California law and chapter 5 of title 11 of the United States Code.

8. The UD Trust brings this lawsuit to avoid these fraudulent transfers and/or to enjoin the Cyrus Group and other insiders from receiving any proceeds from the Acquisition.

**PARTIES**

9. Plaintiff UD Trust is a grantor trust and is organized under, and by virtue of, the laws of the State of Nevada, with its principal place of business at Salt Lake City, Utah.  The UD Trust is the successor to UD Dissolution Corp., formerly known as V3 Systems, Inc. ("**V3**").

10. The UD Trust has been a shareholder of Sphere (or the successor in interest to a shareholder of Sphere) at all times since March 21, 2014, when Sphere acquired V3's assets.

11. As a result of various torts and breaches of contract committed by Sphere in connection with Sphere's purchase of V3's assets, V3 filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § § 101, *et seq.*, on November 26, 2014.  Under V3's Plan of Liquidation, all causes of action and claims of V3 and the bankruptcy estate were transferred to the UD Trust, which was given power and authority to prosecute and defend such causes of action.

12. Defendant Sphere is a corporation organized under the laws of Ontario, Canada, with principal places of business in San Jose and San Diego, California.  Sphere is a virtualization technology solution provider.

13. Defendant Overland is a California corporation that is a wholly owned subsidiary of Sphere, with principal places of business in San Jose and San Diego, California.  Overland provides data protection solutions designed for backup and recovery for small and medium business computing environments.

14. Defendant SVTP is a Delaware limited liability company with its principal place of business in San Jose, California.  Defendant Kelly formed SVTP in January 2018 for the sole purpose of effectuating the Acquisition.  Kelly controls SVTP and beneficially owns all of its shares.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

15. Defendant Kelly is an individual and a citizen of California. Kelly became chief executive officer of Overland in January 2009 and a director of Overland in November 2007.

16. While serving as CEO and director of Overland, Kelly also became Sphere's Chairman in July 2013 and CEO in December 2014. Kelly still serves as Chairman and CEO of Sphere, and is a shareholder.

17. Defendants CCP, Cyrus Funds, Cyrus GP, Cyrus Advisors, FBC, and Freidheim are defined individually herein and collectively comprise the "**Cyrus Group**."

    a. Defendant Cyrus Capital Partners, L.P. ("**CCP**") is a Delaware limited partnership with a principal place of business in New York City, New York. On information and belief, no partners of CCP are citizens of Utah.

    b. The **Cyrus Funds** consists of the following defendant entities:

        i. Defendant Crescent 1, L.P., ("**Crescent**") is a Delaware limited partnership with a principal place of business in New York, New York. On information and belief, no partners of Crescent are citizens of Utah.

        ii. Defendant CRS Master Fund, L.P., ("**CRS**") is a Cayman Islands exempted limited partnership. On information and belief, its principal place of business is in New York, New York, and no partners of CRS are citizens of Utah.

        iii. Defendant Cyrus Opportunities Master Fund II, Ltd., ("**Cyrus Opportunities**") is a Cayman Islands exempted limited company. On information and belief, its principal place of business is in New York, New York, and no members of Cyrus Opportunities are citizens of Utah.

        iv. Defendant Cyrus Select Opportunities Master Fund, Ltd. ("**Cyrus Select**") is a Cayman Islands exempted limited company. On information and belief, its principal place of business is in New

York, New York, and no partners of Cyrus Select are citizens of Utah.

   c. Defendant Cyrus Capital Partners GP, L.L.C. ("**Cyrus GP**") is a Delaware limited partnership with a principal place of business in New York, New York. On information and belief, no members of Cyrus GP are citizens of Utah.

   d. Defendant Cyrus Capital Advisors, L.L.C. ("**Cyrus Advisors**") is a Delaware limited liability company with a principal place of business in New York, New York. On information and belief, no members of Cyrus Advisors are citizens of Utah.

   e. Defendant FBC Holdings, S.A.R.L. ("**FBC**") is a Luxembourg private limited liability company affiliated with the Cyrus Group. On information and belief, its principal place of business is in New York. On information and belief, no members of FBC are citizens of Utah.

   f. Defendant Stephen C. Freidheim ("**Freidheim**") is the managing member of Cyrus GP and Cyrus Advisors and is the Chief Investment Officer of CCP. On information and belief, Freidheim's principal place of business and/or residence is in New York.

18. CCP is the investment manager of each of the Cyrus Funds, and Cyrus GP is the general partner of CCP. The Cyrus Funds and Freidheim have entered into an investment management agreement with CCP giving CCP full voting and disposition power over the Common Shares held by the Cyrus Group.

19. Unless otherwise noted herein, CCP effectuated and/or controlled any and all actions or omissions of the Cyrus Group alleged herein by negotiating, voting for, and/or otherwise directing the actions or omissions.

- 5 -
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**JURISDICTION AND VENUE**

20. The UD Trust has authorization to pursue any and all avoidance actions under Chapter 5 of the Bankruptcy Code for the benefit of unsecured creditors of the Debtor's bankruptcy estate.

21. This Court has original jurisdiction over this civil action by virtue of the provisions of 28 U.S.C. § 1334 in that this is a case pertaining to the Bankruptcy Code, and/or a proceeding arising under the Bankruptcy Code, and/or arising in or related to a case under Bankruptcy Code, namely V3's bankruptcy case.

22. Additionally, this Court has original jurisdiction over this civil action by virtue of the provisions of 28 U.S.C. § 1332.

23. The UD Trust is a citizen of the state of Utah. As shown above, none of the defendants is a citizen of the state of Utah, but, instead, are citizens of California, New York, Delaware, the Cayman Islands, and/or Luxembourg. Complete diversity exists as between all plaintiffs on the one hand, and all Defendants, on the other hand.

24. The matter in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs.

25. This Court can assert personal jurisdiction over Defendants because each and every one of the Defendants maintains its principal residence or place of business in California and/or has purposefully directed its activities toward California through the facts alleged herein. Accordingly, Defendants all maintain sufficient minimum contacts with California to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

26. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in this district and a substantial part of the property that is the subject of the action is situated. According to Section 1.2 of the February 20, 2018 Share Purchase Agreement between Sphere, Overland, and SVTP, the Acquisition shall be closed in Menlo Park, California, which is in the Northern District of California. Additionally, Section 10.7 of the Share Purchase Agreement states that any disputes about the Share

Purchase Agreement will be governed by the laws of the state of California and that venue is properly laid in Federal District Courts of California in Santa Clara.

## GENERAL ALLEGATIONS OF FACTS

27. The Cyrus Group is an activist investor with a reputation of surreptitiously orchestrating complex transactions involving multiple related entities in ways that solely benefit the Cyrus Group and its myriad related entities.

28. Since at least as early as 2006, the Cyrus Group has coordinated a series of debt and equity transactions that has ultimately resulted in the Cyrus Group controlling Tandberg Data Holdings S.à r.l. or related entities (collectively "**Tandberg**"), Overland, and eventually Sphere. In each of these transactions, the Cyrus Group gained control of target entities through a series of secured, convertible debt transactions that ultimately resulted in rendering the target entities insolvent, while ensuring graceful exits for the Cyrus Group and their favored officers and directors.

29. In June 2006, the Cyrus Group entered into a $23 million loan with Tandberg on terms that Tandberg could not repay. The loan effectively forced Tandberg into bankruptcy in 2009.

30. In 2009, the Cyrus Group emerged from Tandberg's bankruptcy as Tandberg's controlling shareholder.

31. On information and belief, in the years following Tandberg's bankruptcy, the Cyrus Group was on the lookout for strategic transaction opportunities that would benefit the Cyrus Group's stakes in Tandberg.

32. The Cyrus Group began discussions with Overland at least as early as 2012 to explore a potential transaction.

33. On or around February 12, 2013, Overland entered into a note purchase agreement with Cyrus Group entities, including, at a minimum, Cyrus Opportunities, CRS, Crescent, and Cyrus Select, wherein the Cyrus Group entities acquired convertible promissory notes of Overland in the principal amount of $13.25 million.

34. In connection with the note purchase agreement, Overland entered into an agreement with Sphere whereby Overland would become the exclusive distributor of Sphere products. As part

of the transaction, Sphere made an investment in Overland, and Eric Kelly, who was Chairman of Overland at the time, also became Chairman of Sphere in July 2013.

35. Later that year, in November 2013, Overland, FBC, and Tandberg entered into an agreement by which Overland would acquire all of the capital stock of Tandberg (the "**Tandberg Acquisition**"). On information and belief, the Cyrus Group exercised its control of Overland by causing Overland to enter into this agreement.

36. Meanwhile, in December 2013, Sphere and V3 entered into a letter of intent for Sphere to purchase the assets of V3 (the "**V3 Asset Purchase**").

37. In or around the same time of the V3 Asset Purchase negotiations, Sphere and Kelly caused V3 to enter into a Master Distribution Agreement to transfer V3's sales to Overland in an effort to increase Overland's revenues for the quarter.

38. The Tandberg Acquisition closed in January 2014.

39. As part of the Tandberg Acquisition, the Cyrus Group required that it have the right to appoint a member to Overland's board of directors (the "**Board Appointment Agreement**").

40. At the close of the Tandberg Acquisition, the Cyrus Group's holdings in Tandberg increased from approximately 19.99% to 63% of Tandberg's equity, while Overland sank deeper into debt.

41. In February 2014, Sphere entered into the Asset Purchase Agreement for the V3 Asset Purchase. The Cyrus Group leveraged its control of Tandberg and Overland to facilitate the V3 Asset Purchase by agreeing to lend $5 million to Sphere in convertible loans for the transaction (the "**March 2014 Debenture**").

42. The V3 Asset Purchase closed in March 2014.

43. Immediately after the V3 Asset Purchase closed, the Cyrus Group exercised its right under the Board Appointment Agreement and placed one of the Cyrus Group's partners and CCP employee, Daniel Bordessa, on Overland's board of directors.

44. In May 2014, the Cyrus Group continued to leverage its control over both Overland and Sphere with the announcement Sphere's acquisition of Overland (the "**Overland Acquisition**").

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

45. In December 2014, CCP and other Cyrus Group entities facilitated the Overland Acquisition by consolidating all of Sphere's and its subsidiaries' (including Overland's) outstanding indebtedness with the Cyrus Group, including the March 2014 Debenture, into a new debenture between FBC and Sphere with an aggregate principal amount of $19,500,000 (the "**December 2014 Debenture**").

46. Mr. Bordessa was then appointed to Sphere's Board in December 2014 and served on Sphere's Board through December 2016.

47. In April 2016, the Cyrus Group rolled an addition $5 million convertible loan in the December 2014 Debenture, bringing the total principal amount of the December 2014 Debenture to $24.5 million.

48. On information and belief, the Cyrus Group has long-standing relationships with other past and current Sphere board members, including, without limitation, Kelly, who frequently dealt with the Cyrus Group in connection with Kelly's prior work at Overland.

49. In October 2015, V3's successor-in-interest, the UD Trust, brought a lawsuit against Sphere for over $10 million based upon claims of breach of fiduciary duty, breach of contract, securities fraud, and related claims arising from the V3 Asset Purchase in a lawsuit styled *UD Dissolution Liquidating Trust v. Sphere 3D Corporation*, which originally was brought in the U.S. Bankruptcy Court for the District of Utah (the "**V3 Litigation**"). A copy of the Complaint in the V3 Litigation is attached as Exhibit A.

50. The Cyrus Group currently holds at least $27 million in debt in Sphere consisting of $24.5 million in convertible debentures, plus a $2.5 million term loan that was entered into in September 2016.

51. As of February 26, 2018, the Cyrus group controlled shares (including convertible warrants) totaling 10.5% of Sphere's stock.

52. Since entering into its loans with the Cyrus Group, Sphere has consistently been unable to make payments due on the loans.

53. The Cyrus Group acquired much of its stock in Sphere over time, from June 2014 to the present, by accepting transfers of equity from Sphere in lieu of interest payments.

54. Sphere's convertible notes are secured by substantially all of the assets of Sphere and are scheduled to mature on March 31, 2018.

55. Since Cyrus's initial loan to Sphere in March 2014, Sphere's financial condition has steadily worsened, fueling public speculation about Sphere getting delisted from NASDAQ and filing bankruptcy, and generating massive sell-offs in early 2018.

56. In January 2018, Kelly, individually and, upon information and belief, at the direction or with the knowledge and tacit approval of the Cyrus Group, FBC, and Sphere, formed SVTP for the purpose of effectuating a sale of Overland.

57. Overland constitutes substantially all of Sphere's assets and at least 90% of Sphere's revenue.

58. On February 20, 2018, Sphere entered into the Share Purchase Agreement (the "**SPA**") whereby Sphere agreed to sell Overland to SVTP for $45 million (plus or minus any working capital adjustment) in cash. A publicly available copy of the SPA is attached as Exhibit B.

59. The $45 million valuation of Overland was performed by Roth Capital.

60. Roth Capital has previously performed valuations nominally for Overland but, on information and belief, has done so at the behest and for the benefit of Kelly and Cyrus, including in connection with Sphere's acquisition of Overland in December 2014 and with Overland's acquisition of Tandberg in January 2013.

61. With regard to SVTP's Acquisition of Overland, Roth Capital has disclosed receiving compensation from Sphere that includes, among other payments, 200 Common Shares of Sphere and warrants to acquire approximately 73,367 Common Shares at $5.00 per share—incentivizing Roth Capital to ensure that the deal closes promptly so Roth can cash its shares and exercise warrants before any bankruptcy or insolvency proceeding of Sphere.

62. Roth Capital's current valuation of Overland at $45 million is significantly less than the $81.9 million Overland valuation that Roth Capital performed in 2014 in connection with

Sphere's acquisition of Overland, even though any decreases in revenue for Overland over the same time have been of a significantly less magnitude than Roth Capital's change in valuation.

63. According to Sphere, the net proceeds from the Acquisition will be used to repay Sphere's outstanding $24.5 million convertible debt obligations to FBC, $18.2 million in debt owed to Opus Bank, and other expenses and debt owed to creditors other than the UD Trust.

64. According to Sphere, after the Overland sale has closed, Sphere will continue to sell its converged and hyperconverged infrastructure products and professional services under its HVE brand, and also will retain its SNAP product family. Nevertheless, once the Acquisition closes, Sphere will have divested itself of 90% of its current source of its revenue and assets, intentionally foreclosing itself from fulfilling obligations to the UD Trust and other creditors, while directly benefiting the Cyrus Group, Sphere, Overland, SVTP, Kelly, and other insiders.

65. In the weeks following Sphere's announcement of the Acquisition, Sphere's stock prices have plummeted, propelled, in part, by massive sell-offs by the Cyrus Group and other insiders.

66. On information and belief, Sphere's transfer of Overland to SVTP was done with an actual intent to hinder, delay, or defraud the UD Trust, and/or, at a minimum, was a constructively fraudulent transfer.

**FIRST CAUSE OF ACTION**
**(Actual Fraudulent Transfer—11 U.S.C. §§ 544(b), 550 and Cal. Civ. Code § 3439.04(a)(1) – all Defendants)**

67. The UD Trust restates and re-alleges each and every allegation contained in the previous paragraphs of this Complaint, and incorporates the same by reference as though fully set forth herein.

68. The UD Trust has asserted claims against Sphere in the V3 Litigation for over $10 million and is therefore a creditor of Sphere.

69. Sphere's agreement to transfer Overland to SVTP for $45 million pursuant to the SPA constitutes an avoidable transfer of property under California law and Chapter 5 of the Bankruptcy Code.

- 11 -
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

70. Based on the foregoing, the December 2014 Debenture constitutes an avoidable transfer of property under California law and Chapter 5 of the Bankruptcy Code.

71. Sphere has repeatedly agreed to transfer property with actual intent to hinder, delay, or defraud one or more of its creditors, including the UD Trust, as manifest by some or all of the following factors:

   a. The transfers were made to insiders;
   b. Sphere's CEO, Kelly, serves as CEO or principal of both Sphere and SVTP, effectively allowing Sphere to retain possession or control of Overland despite the proposed sale;
   c. Sphere's agreement to sell Overland and the April 2016 amendment to the December 2014 Debenture were made in the midst of the UD Trust's pending $10 million lawsuit against Sphere and other threatened litigation by third parties against Sphere and its affiliates;
   d. The pledge of the shares of Overland and the December 2014 Debenture constitute a transfer and/or encumbrance of substantially all of Sphere's assets and all of Overland's assets;
   e. Upon information and belief, the value received by Sphere for entering into the SPA for the sale of Overland and/or for pledging substantially all of its assets to the Cyrus Group are less than the reasonable equivalent value of Overland or Sphere;
   f. Upon information and belief, at all relevant times Sphere has lacked and continues to lack the ability to pay its debt as they become due, including but not limited to servicing the December 2014 Debenture and/or the Opus Credit Agreement;
   g. Sphere is insolvent and/or will be rendered insolvent as a result of the proposed Overland sale and the December 2014 Debenture.

72. The UD Trust was harmed as a result of Sphere's agreement to sell Overland.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

73. Sphere's conduct was a substantial factor in causing the UD Trust's harm.

74. Pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code § 3439.04(a)(1), the UD Trust is entitled to avoid the December 2014 Debenture and/or the Acquisition in its entirety. Alternatively, the UD Trust is entitled to an injunctive order compelling SVTP to hold any proceeds from the Acquisition in escrow for the benefit of the UD Trust until the V3 Litigation is resolved; or, alternatively, to an injunctive order compelling SVTP to hold proceeds equal to at least the amount of Sphere's total obligations to the Cyrus Group, for the benefit of the UD Trust until the V3 Litigation is resolved.

75. Pursuant to 11 U.S.C. § 550(a), the UD Trust may recover from Sphere and/or SVTP the property transferred, or if the court so orders, the value of the transfer.

**SECOND CAUSE OF ACTION**
**(Constructively Fraudulent Transfer—11 U.S.C. §§ 544(b), 550 and Cal. Civ. Code § 3439.04(a)(2) – all Defendants)**

76. The UD Trust restates and re-alleges each and every allegation contained in the previous paragraphs of this Complaint, and incorporates the same by reference as though fully set forth herein.

77. The UD Trust has asserted claims against Sphere in the V3 Litigation for over $10 million and is therefore a creditor of Sphere.

78. Sphere's agreement to transfer Overland to SVTP for $45 million pursuant to the SPA constitutes an avoidable transfer of property under California law and Chapter 5 of the Bankruptcy Code.

79. Based on the foregoing, the December 2014 Debenture also constitutes an avoidable transfer of property under California law and Chapter 5 of the Bankruptcy Code.

80. Upon information and belief, the consideration that Sphere will receive for Overland under the SPA is less than the reasonably equivalent value of Sphere and/or Overland.

81. Upon information and belief, the consideration that Sphere and/or Overland received in exchange for pledging all of its assets to the Cyrus Group as part of the December 2014 Debenture is less than the reasonably equivalent value of Sphere and/or Overland.

82. Upon information and belief, at all times relevant, Sphere has not been able to pay its debts as they become due.

83. Upon information and belief, Sphere was insolvent at that time the transfers occurred and/or has been or will be rendered insolvent as a result of transfers.

84. Upon the final closing of Sphere's sale of Overland, Sphere will be left with virtually no assets and has incurred and/or will incur debts beyond Sphere's ability to pay the debts as they become due.

85. Additionally, Sphere will be left with assets (if any) that are unreasonably small in relation to the business that Sphere has stated it will engage in after the sale.

86. The UD Trust has been harmed as a result of the proposed sale of Overland.

87. Sphere's conduct was a substantial factor in causing the UD Trust's harm.

88. Pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code § 3439.04(a)(2), the UD Trust is entitled to avoid the December 2014 Debenture and/or the Acquisition in its entirety.  Alternatively, the UD Trust is entitled to an injunctive order compelling SVTP to hold any proceeds from the Acquisition in escrow for the benefit of the UD Trust until the V3 Litigation is resolved; or, alternatively, to an injunctive order compelling SVTP to hold proceeds equal to at least the amount of Sphere's total obligations to the Cyrus Group, for the benefit of the UD Trust until the V3 Litigation is resolved.

89. Pursuant to 11 U.S.C. § 550(a), UD Trust is may recover from Sphere and or SVTP the property transferred, or if the court so orders, the value of the transfer.

**THIRD CAUSE OF ACTION**
**(Breach of Fiduciary Duty – Defendant Kelly)**

90. The UD Trust restates and re-alleges each and every allegation contained in the previous paragraphs of this Complaint, and incorporates the same by reference as though fully set forth herein.

91. The UD Trust has been a shareholder of Sphere at all relevant times.

92. By virtue of his fiduciary position as an officer and director of Sphere, Kelly is required to: (a) act in furtherance of the best interests of Sphere's shareholders; (b) maximize

shareholder value in a sale of substantially all of the Company's assets; (c) heed the expressed views of Sphere's shareholders; and (d) refrain from abusing his positions of control.  To comply with his fiduciary duties, Kelly is prohibited from taking any action that would:

   a. adversely affect the value provided to Sphere's shareholders;
   b. discourage, inhibit, or deter alternative offers to purchase substantially all of Sphere's assets;
   c. contractually prohibit himself from complying with fiduciary duties;
   d. otherwise adversely affect his duty to secure the best value reasonably available under the circumstances for Sphere's shareholders;
   e. provide himself and other insiders with preferential treatment at the expense of, or separate from, the Company's public shareholders;
   f. divide loyalties owed to shareholders;
   g. result in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or
   h. unjustly enrich himself at the expense or to the detriment of the public shareholders.

93. By reason of his position as an officer and director of Sphere, Kelly owed and owes Sphere and Sphere shareholders, including the UD Trust, fiduciary obligations of trust, loyalty, good faith and fair dealing, and due care.  Kelly was and is required to act in furtherance of the best interests of the UD Trust and not in furtherance of their personal interest or benefit.

94. Kelly has violated fiduciary duties of care and loyalty owed to the UD Trust in ways that include, without limitation:

   a. On information and belief, intentionally and knowingly forming SVTP for the purpose of stripping Sphere of substantially all of Sphere's assets to avoid V3's claim, thereby enriching Kelly and/or the Cyrus Group and other insiders to the detriment of Sphere and the UD Trust;

      b.  On information and belief, directing Roth Capital to knowingly, intentionally, and/or recklessly render an unfair valuation of Sphere's assets in order to minimize any roadblocks in closing the Acquisition, thus securing proceeds from the acquisition for himself through his wholly owned entity; and

      c.  Otherwise engaging in various wrongful acts and omissions to effectuate the Acquisition, with the purpose and intent of maximizing his personal interest in the Acquisition, and/or the interests of the Cyrus Group and other insiders, to the detriment of the UD Trust.

95. As a result of Kelly's breaches of fiduciary duties, the UD Trust has been directly damaged in ways that are distinct from any harm suffered by other shareholders, including, without limitation, the fact that the Kelly's breaches has resulted, and will further result, in the UD Trust being foreclosed, or severely hindered, from recovering any Sphere assets in connection with the V3 Litigation.

96. The UD Trust is immediately threatened by the acts and transactions complained of herein and will suffer irreparable harm unless Kelly is enjoined from breaching his fiduciary duties to Sphere as set forth herein.

97. The UD Trust has no adequate remedy at law. Only through the exercises of this Court's equitable powers can the UD Trust be fully protected from the immediate and irreparable injury which the above-described actions threaten to inflict.

**FOURTH CAUSE OF ACTION**
**(Aiding and Abetting Breach of Fiduciary Duty – the Cyrus Group Defendants**
**(CCP, FBC, Crescent, CRS, Cyrus Opportunities, Cyrus Select, Cyrus GP,**
**Cyrus Advisors, and Freidheim))**

98. The UD Trust restates and re-alleges each and every allegation contained in the previous paragraphs of this Complaint, and incorporates the same by reference as though fully set forth herein.

99. As alleged previously, Kelly has breached fiduciary duties to the UD Trust.

100. The Cyrus Group has aided and abetted Kelly's breaches of fiduciary duties in ways that include, without limitation, facilitating the fraudulent transfers alleged herein and otherwise

orchestrating a series of convertible debt-to-equity transactions with Tandberg, Overland, and Sphere in ways that have ultimately resulted in the Cyrus Group taking control of Sphere with both debt and equity positions to the detriment of the UD Trust, thereby enabling the Cyrus Group to insist on onerous loan agreements with Sphere that Sphere cannot repay and that have left Sphere with no viable options but to continue transferring equity to the Cyrus Group.

101. The Acquisition is yet another strategic transaction that the Cyrus Group has masterminded with the intent to quickly and unfairly force a sale of an asset at an unreasonably low value in order to facilitate repayment of its secured loans to the detriment of the UD Trust.

102. The UD Trust is immediately threatened by the acts and transactions complained of herein and will suffer irreparable harm unless the Cyrus Group is enjoined from aiding and abetting Kelly's breaching of his fiduciary duties to Sphere as set forth herein.

103. The UD Trust has no adequate remedy at law. Only through the exercises of this Court's equitable powers can the UD Trust be fully protected from the immediate and irreparable injury which the above-described actions threaten to inflict.

**FIFTH CAUSE OF ACTION**
**(Equitable Subordination –11 U.S.C. § 502(c), Cal. Com. Code § 1103(b) – all Defendants)**

104. The UD Trust restates and re-alleges each and every allegation contained in the previous paragraphs of this Complaint, and incorporates the same by reference as though fully set forth herein.

105. The Cyrus Group, SVTP, Overland, and Kelly are insiders of Sphere within the meaning of 11 U.S.C. § 101(31).

106. Kelly is a fiduciary within the meaning of California Law.

107. As detailed above, Defendants have engaged in inequitable conduct.

108. Based on the foregoing, this misconduct came at the expense of Sphere's shareholders and creditors, including but not limited to the UD Trust, and conferred an unfair advantage on Defendants as a result.

109. Under the circumstances, subordination would not be inconsistent with the Bankruptcy Code or the California Uniform Commercial Code.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

110. Under the circumstances, it would be inequitable for Cyrus Group, and Kelly to strip substantially all of Sphere's assets, pay themselves, and then laden those assets again with unserviceable debt by handing them to SVTP under Kelly's control.

111. Therefore, the Court should equitably subordinate the claimed debts of the Cyrus Group, the claimed rights and equity interests of Kelly, and others who participated in the scheme described above to the interests and claims of the UD Trust.

### SIXTH CAUSE OF ACTION
**(Temporary Restraining Order and Preliminary Injunction – all Defendants)**

112. The UD Trust restates and re-alleges each and every allegation contained in the previous paragraphs of this Complaint, and incorporates the same by reference as though fully set forth herein.

113. The UD Trust will suffer irreparable injury unless the Court enters an order enjoining Defendants from closing the proposed acquisition of Overland from Sphere to Defendants.   Namely, Sphere will be unable to satisfy any judgment the UD Trust could obtain against Sphere as a result of the transfer.

114. The threatened injury to the UD Trust of being unable to satisfy its anticipated judgment against Sphere outweighs whatever damage the proposed injunction may have against Defendants.

115. The injunction, if issued, will not be adverse to the public interest because of public policy to promote fairness in business dealings and to prevent fraudulent transfers

116. Based on the foregoing, there is a substantial likelihood of success on the merits of the UD Trust's fraudulent transfer claim against Defendants.

117. Therefore, the UD Trust is entitled to an order enjoining the Acquisition.

118. Alternatively, the UD Trust is entitled to an injunctive order compelling SVTP to hold any proceeds from the Acquisition in escrow for the benefit of the UD Trust until the V3 Litigation is resolved; or, alternatively, to an injunctive order compelling SVTP to hold proceeds equal to at least the amount of Sphere's total obligations to the Cyrus Group, for the benefit of the UD Trust until the V3 Litigation is resolved.

## PRAYER FOR RELIEF

Based upon the foregoing, the UD Trust prays for entry of judgment and relief against the Defendants, and each of them, in the following particulars:

A. For all forms of damages as may be allowed, in such sums as may be proven at trial;

B. For all equitable remedies as may be allowed, in the form of, without limitation, restitution, constructive trust, turnover, the appointment of one or more receivers, appropriate accountings, for the return of Overland to Sphere, and for injunctive relief;

C. For each and every remedy allowed by statute;

D. For an award of punitive damages against each of the Defendants, for their respective wrongful acts, inasmuch as the same were committed willfully, maliciously intentionally and are fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others;

E. For all of the UD Trust's reasonable attorneys' fees, costs and expenses as may be allowed at law, in equity, by contract, statute, rule, inherent power of the Court or otherwise;

F. For prejudgment interest at the maximum applicable rates; and

G. For all such other and further relief as the Court deems just, equitable and proper.

DATED this 28th day of March, 2018.

                        FABIAN VANCOTT

                        By: *Philip D. Dracht*
                              Philip D. Dracht
                              Kevin N. Anderson
                              Audrey S. Olson
                              *Attorneys for Plaintiff UD Dissolution Trust*